UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHEN H. SMITH, | CASE NO. 2:24-cv-01987-LK |
| Plaintiff, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ASCENSION ACQUISITION LLC et al., | |
| Defendants. | |

This matter comes before Court on Plaintiff Stephen H. Smith's Motion for Summary Judgment. Dkt. No. 39. For the reasons stated below, the Court DENIES the motion.

**I.   BACKGROUND**

On December 3, 2024, Smith filed a complaint asserting breach of contract and unjust enrichment claims against Defendants Ascension Acquisition, LLC, Ryker Douglas LLC, and Douglas M. Leech. Dkt. No. 1 at 1, 9–10. His claims relate to a business relationship that went awry. On June 5, 2020, Smith Management Services LLC (which is owned by Smith) and Defendant Ryker Douglas LLC (whose sole member is Defendant Douglas Leech) formed Smith Douglas Holdings, LCC ("SDH") "to acquire, develop[,] and manage inpatient recovery centers

on the eastern seaboard[.]" Dkt. No. 40 at 1–2. On March 10, 2023, SDH entered into three agreements with Defendant Ascension Acquisition, LLC and its affiliates related to a recovery center called the Camp Road Facility: (1) a Purchase Agreement, (2) a Development Agreement, and (3) a Lease Agreement. *Id.* at 2; *see also id.* at 7–17 (Development Agreement).[1] As particularly relevant here, the parties to the Development Agreement are Ascension, SDH, and Smith as "a beneficial owner of SDH." Dkt. No. 40 at 7. On the same date the above three agreements were executed, Smith entered into a Contribution and Indemnification Agreement with Leech and Ryker Douglas. Dkt. No. 1 at 3, 6; Dkt. No. 40 at 19–33.

From what the Court can surmise, the Purchase Agreement involved the purchase by Ascension of interests in the Camp Road Facility from SDH, *see* Dkt. No. 40 at 2, 7, 19; the Development Agreement obligated SDH to develop the Camp Road Facility, *id.* at 7–17; and the Lease Agreement required an Ascension affiliate to pay rent to SDH for the Camp Road Facility after its development, *see id.* at 2, 7–8. Pursuant to the Development Agreement, if SDH substantially completed the Camp Road Facility by April 10, 2024, Ascension would pay SDH up to $3,550,000—a "holdback" amount from the funds Ascension owed under the Purchase Agreement. *Id.* at 9, 11–12. If, on the other hand, SDH failed to substantially complete the Camp Road Facility by May 10, 2024, SDH and Smith would owe Ascension daily liquidated damages of (1) $5,000 per day for the first 30 days, and (2) $7,500 per day thereafter. *Id.* at 9, 15. Ascension and its affiliate required personal indemnification for the Development Agreement, *id.* at 20, and Smith (as "a beneficial owner of SDH") undertook that obligation, personally guaranteeing the Development Agreement, *id.* at 15.

---

[1] On May 14, 2025, Smith voluntarily dismissed Ascension as a defendant in this action. Dkt. No. 30.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 2

As the Contribution and Indemnification Agreement executed by Smith, Leech, and Ryker Douglas explains, "at the request of Leech, neither Leech nor Ryker Douglas [we]re parties to the Purchase Agreement, the Indemnification Agreement, or the Development Agreement," nor did they "directly undertake[] any of the Purchase Agreement Indemnification Obligations to [Ascension] under the Purchase Agreement, the Indemnification Agreement Obligations under the Indemnification Agreement, [or] the Development Agreement Obligations under the Development Agreement." *Id.* at 20.[2] However, "both Leech and Ryker Douglas w[ould] receive direct and indirect benefits from the consummation of the transactions contemplated under" the three agreements. *Id.* Smith "agreed that neither Leech nor Ryker Douglas w[ould] be required to execute" the three agreements in reliance on Leech and Ryker Douglas's execution of the Contribution and Indemnification Agreement, which "allocate[d] the liability for the Specified Obligations." *Id.*[3] As relevant here, the Contribution and Indemnification Agreement states as follows:

> The Parties . . . acknowledge that Smith . . . and [SDH] have made certain representations, warranties, and covenants . . . under, or pursuant to, . . . the Development Agreement . . . and that Smith . . . and [SDH] may be called upon to satisfy the liabilities or obligations that may arise in connection with . . . the Development Agreement (the "**Development Agreement Obligations**" and together with the [other obligations], the "**Special Responsibility Obligations**"). . . . [T]he Parties intend that . . . any amount paid by . . . Smith . . . or [SDH] in satisfaction of the Special Responsibility Obligations (whether pursuant to the Purchase Agreement or Development Agreement in accordance with their respective terms, a judgment against Smith . . . or [SDH], pursuant to a settlement, or otherwise) ("**Special Responsibility Obligation Indemnification**

---

[2] "Purchase Agreement Indemnification Obligations" are defined as "certain indemnification obligations to [Ascension] and certain of [its] affiliates . . . as more particularly set forth in the Purchase Agreement." *Id.* at 19. "Indemnification Agreement Obligations" are defined as "certain on-going indemnification and contributions obligations to [Ascension] and certain of [its] affiliates" pursuant to the "Indemnification and Contribution Agreement" executed by Ascension, SDH, and Smith. *Id.* at 19–20. "Development Agreement Obligations" are defined as "certain on-going obligations to [Ascension] and certain of [its] affiliates related to the construction and development of the Camp Road Project." *Id.* at 20.

[3] "Specified Obligations" include the Purchase Agreement Indemnification Obligations, Indemnification Agreement Obligations, and Development Agreement Obligations. *Id.*

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 3

**Payments**") . . . shall be borne one hundred percent (100%) by [Leech and Ryker Douglas].

*Id.* at 21–22. If Leech and Ryker Douglas failed to pay amounts owed to Smith or SDH under the Contribution and Indemnification Agreement, (1) Leech and Ryker Douglas would owe interest, (2) all amounts owed to Leech and Ryker Douglas under SDH's LLC Agreement would be paid to Smith Management Services LLC until the sum was paid in full, (3) the indemnified party would also be able to offset the indemnification sums from any loan amounts owed by SDH to Ryker Douglas, and (4) Leech and Ryker Douglas would have to pay the indemnified party's attorney's fees and costs incurred as a result of their breach of the Contribution and Indemnification Agreement. *Id.* at 23–24.

According to Smith, due to "liquidity issues" at SDH and his "singular personal exposure for the delivery obligations" under the Development Agreement, in early 2024 he "personally funded $996,234" to pay the contractor, Jarrett Construction, to complete the Camp Road Facility and deliver it on time. *Id.* at 3; *see also* Dkt. No. 39 at 6. To obtain these funds, Smith claims that he personally borrowed $1,030,000 from an individual named William Kelly. Dkt. No. 40 at 3; *see also* Dkt. No. 39 at 6. He alleges that Leech and Ryker Douglas are responsible for the $996,234 sum (plus interest and costs) under the Contribution and Indemnification Agreement. Dkt. No. 40 at 3; *see also* Dkt. No. 39 at 6. According to Smith, he "ha[s] not been reimbursed" by them despite formally demanding reimbursement in November 2024. Dkt. No. 40 at 3; *see also id.* at 45–47; Dkt. No. 39 at 6–7.

Defendants see it differently. According to Leech and Ryker Douglas, Smith "took multiple actions that exceeded the grant of authority" given to him by SDH under a "Unanimous Written Consent in Lieu of a Special Meeting" executed by the members of SDH in February 2023. Dkt. No. 41 at 3. They also dispute whether the personal loan that Smith purports to have taken out was

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 4

1 "actually used . . . for the benefit of SDH or the Camp Road Project" and deny that Smith "is
2 entitled to any repayment." *Id.* at 4; *see also* Dkt. No. 41-1 at 3–4.

3       Shortly after Smith filed suit, the parties filed a joint motion to stay the case "pending a
4 determination of arbitrability by mediator Jay Kornfeld." Dkt. No. 16 at 1. Kornfield was asked
5 by the parties to determine whether a prior settlement agreement covered the dispute at issue in
6 Smith's complaint. *Id.* at 1–2. This settlement apparently resolved two prior cases involving the
7 parties—one in the Superior Court of Spokane County and another in Orange County, Florida.
8 Dkt. No. 41 at 3–4, 9–10. The Court granted the stay on January 24, 2025. Dkt. No. 17.  While the
9 Court is not privy to Kornfeld's decision, Smith represents that Kornfeld determined that the
10 Indemnification Agreement at issue in this case was not referenced in the Settlement Agreement,
11 and "there is no resolution of any issues, disputes, or claims" in the Settlement Agreement that
12 "might have existed or arisen under that Indemnification Agreement." Dkt. No. 42 at 7. Smith
13 claims to have attached this ruling in connection with his reply brief, but failed to do so. Dkt. No.
14 43 at 1, 4–7.

15       In any event, the stay concluded and Leech and Ryker Douglas filed their answer as well
16 as counterclaims for breach of contract and breach of fiduciary duty. Dkt. No. 19. Smith filed this
17 motion for summary judgment on July 21, 2025, over a month prior to the deadline for initial
18 disclosures, Dkt. No. 38 at 1, stating that summary judgment is appropriate because his right to
19 relief is based on contractual language. Dkt. No. 39 at 1–2.

## II. DISCUSSION

21       Smith argues that (1) the Indemnification Agreement is signed and enforceable, (2) he
22 borrowed and paid $996,234 of his own funds "[t]o honor SDH's obligations under the
23 Development Agreement to Ascension/RCap"—obligations that constitute "Special
24 Responsibility Obligation[s]" under the Indemnification Agreement, and (3) Leech and Ryker

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 5

Douglas failed to pay Smith $996,234 despite a formal demand. Dkt. No. 39 at 8–10.[4] Based on these arguments, Smith says that "there is no question of fact" that Leech and Ryker Douglas breached the Indemnification Agreement. *Id.* at 8 (citation modified).

Defendants disagree, arguing that Smith is not entitled to summary judgment because his arguments rely on "multiple questions of fact" into which "Defendants have not yet been able to conduct discovery[.]" Dkt. No. 41 at 6. Discovery opened on August 25, 2025, Dkt. No. 38 at 1, and closes on June 12, 2026, Dkt. No. 47 at 2. Defendants request that the Court either defer ruling on the motion until the end of discovery or deny the motion as premature pursuant to Federal Rule of Civil Procedure 56(d). *See* Dkt. No. 41. at 1–2. Smith replies that Rule 56(d) is inapplicable and maintains that he is entitled to summary judgment. *See generally* Dkt. No. 42.

A.  **Jurisdiction**

Because Smith failed to properly set forth his citizenship or the citizenship of Defendants,[5] the Court issued an Order to Show Cause requiring him to show why the case should not be dismissed for lack of subject matter jurisdiction. Dkt. No. 50. The Court explained that "[i]ndividuals are citizens of the place in which they are domiciled, which is not necessarily the same as where they reside," and "an LLC is a citizen of every state of which its owners/members

---

[4] Smith cites Delaware law, stating in conclusory fashion that "[t]he Development Agreement and [Indemnification Agreement] both have provisions stating that the governing law is the law of the State of Delaware," Dkt. No. 39 at 8 n.2, without engaging in a conflict of laws analysis. *See Johnson v. Peter*, No. C21-1602-LK, 2023 WL 22021, at *4 (W.D. Wash. Jan. 3, 2023) ("When analyzing choice of law provisions . . . federal courts sitting in diversity apply the laws of the forum state"; in Washington, this requires courts to assess "(1) whether there is an actual conflict of laws between the two proposed states, and if so, (2) whether the choice-of-law provision in the relevant agreement is effective.").

[5] *See* Dkt. No. 1 at 1–2 (pleading that Smith "is a resident of the State of Washington"; Ryker Douglas "is now a Florida limited liability company, which, upon information and belief, is principally owned by Messrs. Leech and Boggs and managed, in part, by Mr. Boggs" and that Ryker Douglas's "principal place of business is in Largo, Florida"; Leech "is, upon information and belief, an individual residing in Windermere, Florida" and "an owner of the equity interest of [Ryker Douglas] along with Mr. Boggs"; and "[u]pon additional information and belief, Mr. Leech transferred a majority interest in [Ryker Douglas] to Mr. Boggs to mislead a private equity purchaser Renovus, with regard to what he owned, but whether that illusory transfer was reversed after the fact is unknown"; "Mr. Boggs is not a resident of the State of Washington").

are citizens." Dkt. No. 50 at 2 (citation modified). Despite this instruction, Smith submitted a response that does not expressly aver that he is domiciled in this state. *See generally* Dkt. No. 51. And he asserts in conclusory fashion that "no defendant is a resident of, or domiciled in, the state of Washington." *Id.* at 1–2. This does not suffice to establish diversity. *See* Dkt. No. 50 at 2 (court's order to show cause, citing *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970) for the proposition that "[f]ailure to make proper and complete allegations of diversity jurisdiction relegates a litigant to . . . jurisdictional purgatory" and *Un Boon Kim v. Shellpoint Partners, LLC*, No. 15-cv-611-LAB (BLM), 2016 WL 1241541, at *5 (S.D. Cal. Mar. 30, 2016) for the proposition that diversity is inadequately pleaded when the operative complaint makes only conclusory allegations of citizenship). Smith points the Court to his declaration, Dkt. No. 51 at 1–2, but declarations only support arguments; they are not a substitute for arguments in a party's substantive response. *See* LCR 7(b) ("The argument in support of the motion shall . . . be submitted as part of the motion itself."); *cf. Natera, Inc. v. Neogenomics Lab'ys, Inc.*, No. 1:23-CV-629, 2023 WL 11852796, at *5 n.6 (M.D.N.C. Dec. 27, 2023) ("[D]eclarations are not substitutes for briefs[.]").

Nevertheless, the Court can determine from the arguments properly before it that the parties are diverse. Smith is domiciled here: he has resided in Washington for many years, pays taxes here, is registered to vote in this state, and is raising his family in two homes in the state. Dkt. No. 51 at 1–2, 5. Defendants' diversity disclosure statement establishes that Ryker Douglas is a citizen of Florida; its sole member is Defendant Douglas Leech, who is domiciled in Florida. Dkt. No. 52 at 1. Furthermore, the complaint establishes that over $900,000 is in controversy. Dkt. No. 1 at 9–10. Accordingly, the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) and discharges its Order to Show Cause, Dkt. No. 50.

### B. Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the movant has made such a showing, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation modified).

If the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). "To prevail under this Rule, parties opposing a motion for summary judgment must make '(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis

for believing that the information sought actually exists.'" *Emps Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)).

If a nonmovant has not yet had the "opportunity to discover information that is essential to its opposition," granting summary judgment is "precipitous [and] premature[.]" *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 663–64 (9th Cir. 2020) (citation modified). "[Q]uick summary judgment motions can impede informed resolution of fact-specific disputes." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Rsrv.*, 323 F.3d 767, 774 (9th Cir. 2003). Accordingly, a Rule 56(d) "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Burlington*, 323 F.3d at 773–74 (quoting *Wichita Falls Off. Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992)); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (explaining that although the rule "facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition'" (quoting *Anderson*, 477 U.S. at 250 n.5)).

**C.     Defendants Have Identified the Information They Hope to Gain and its Relevance**

Although Smith contends that the declaration Defendants filed in support of their Rule 56(d) request is insufficient, *see* Dkt. No. 42 at 13, that declaration specifically identifies the categories of information Defendants hope to gain:

- Whether Mr. Smith actually borrowed $996,234;
- Whether the purported promissory note for the loan is genuine;

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 9

- Whether Mr. Smith "actually spent any funds for the benefit of the Camp Road Project"; and
- Whether Mr. Smith made payments that constitute "Special Responsibility Obligations" under the Indemnification Agreement.

Dkt. No. 41-1 at 2–4.

The declaration also details the relevance of the requested information and how it would preclude summary judgment. *See id.* For example, as relevant to the genuineness of the promissory note, the declaration states that the "loan document" attached to Smith's complaint differs from the loan document provided in a related suit in that it "does not contain the paragraphs referring to SDH and Camp Road SDH Real Estate," making "Defendants believe that either or both of the [] loan documents may be forged, fraudulent or altered and may represent an attempt by Smith to commit a fraud[.]" Dkt. 41-1 at 2.[6] Defendants want to use discovery to explore "the discrepancy between the documents." *Id.*

Another example relates to Defendants' specific obligations under the Indemnification Agreement. Defendants are obligated to repay Smith for "Special Responsibility Obligations." *Id.* at 3. In relevant part, the Indemnification Agreement states:

> Smith . . . and [SDH] may be called upon to satisfy the liabilities or obligations that may arise in connection with . . . the Development Agreement (the "Development Agreement Obligations" and together with the PCOR Responsible Obligations, the "Special Responsibility Obligations").

*Id.* at 3–4 (quoting Dkt. No. 1-1 at 5). The declaration states that "[t]hese definitions necessarily present several questions of fact upon which the Defendants would seek discovery, namely: (1) whether Smith was 'called upon' to satisfy any liabilities or obligations; and (2) whether the payments made by Smith 'ar[ose] in connection with the Development Agreement.'" *Id.* at 4. The

---

[6] In February 2024, Smith apparently unilaterally edited the January 2024 promissory note securing the loan "to reflect that the funds would be used for construction of the Camp Road Facility" and "backdated the Note to its initial date of January 10, 2024"—something he discloses to the Court for the first time in his declaration attached to his reply brief. Dkt. No. 44 at 3. At the time Smith modified the promissory note, he and SDH were in litigation against Defendants. *See* Dkt. Nos. 41-3–41-5.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 10

declaration adds, "[t]hese facts are essential to oppose summary judgment because, if [Smith's] alleged payments did not constitute 'Special Responsibility Obligations' under the Indemnification Agreement, then the Defendants would be under no obligation to pay him anything." *Id.*

Smith responds by assuring the Court that Defendants have evidence about these issues. Dkt. No. 42 at 3–4, 10–13. Regarding whether the promissory note is genuine, he states that

> [t]he fact that Mr. Smith modified the Note for the Kelly Loan does not change the fact that there was a $1,030,000 Kelly Loan. The modification is also irrelevant to the actual issue in this matter of whether Mr. Smith used the funds from the Kelly Loan for the Camp Road Facility and is entitled to indemnification under the CIA.

*Id.* at 4. He adds that "[a]lmost six months ago, Mr. Smith and Mr. O'Connor submitted declarations to mediator Mr. Kornfeld and defense counsel, with supporting documentation, which explained why Mr. Smith modified the Note for the Kelly Loan to specify the funds would be used for the Camp Road Facility." *Id.* at 3 (citation modified).

With respect to the dispute over whether Smith's alleged payments constitute "Special Responsibility Obligations" under the Indemnification Agreement, Smith asserts that if he had not "obtained the Kelly Loan in early January and committed all of those funds to keep the constructing going on the Camp Road Facility, the Camp Road Facility would not have been substantially completed on time under the Development Agreement." *Id.* at 12. In support of this claim, he cites his own declaration that states "[h]ad I not obtained the Kelly Loan for the Camp Road Facility, the Camp Road Facility would not have been substantially completed on time." Dkt. No. 44 at 3. But he appears to concede that Defendants have been unable to substantiate that he spent the full amount of the Kelly Loan on the Camp Road Facility. Dkt. No. 44 at 4 (noting that in July 2024, a representative affiliated with SDH "confirmed that he traced at least $896,000 of the Kelly Loan from Mr. Kelly to Jarrett Construction"); Dkt. No. 42 at 2–3, 10.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 11

1   Smith's arguments only underscore that the parties' dispute is not one that can be resolved
2   in a premature motion for summary judgment. Indeed, it is clear even on the limited record before
3   the Court that factual disputes pervade this matter, and the Court is mystified as to why the motion
4   was filed if the parties truly met and conferred in good faith as required by this Court's Standing
5   Order and the Local Civil Rules. Dkt. No. 4-1 at 4; Dkt. No. 37; LCR 1(c)(6). Defendants have
6   not had the opportunity to explore potential defenses in discovery, such as investigating the
7   genuineness of the promissory note, assessing the extent to which the circumstances required—or
8   did not require—Smith to obtain a loan, and evaluating whether Smith expended the loan funds on
9   the Camp Road Facility. *See generally* Dkt. Nos. 39, 41–42. That Defendants may possess relevant
10  evidence prior to discovery does not foreclose their "opportunity to discover information that is
11  essential to [their] opposition." *Inteliclear*, 978 F.3d at 663 (citation modified); *see also Anderson*,
12  477 U.S. at 250 n.5 (Rule 56(d) (then Rule 56(f)) requires that "summary judgment be refused
13  where the nonmoving party has not had the opportunity to discover information that is essential to
14  his opposition"). Specifically, the Court is not persuaded that prior declarations submitted in a
15  mediation eliminate any need for discovery about the genuineness of the promissory note, nor is
16  the Court convinced that—prior to discovery—it would be possible or appropriate to determine
17  whether Smith's alleged payments constitute "Special Responsibility Obligations" under the
18  Indemnification Agreement. While some evidence may exist and already be in Defendants'
19  possession, resolving summary judgment at this stage seriously risks "imped[ing] informed
20  resolution of fact-specific disputes" through discovery. *Burlington*, 323 F.3d at 774. Doing so
21  would be "precipitous [and] premature[.]" *Inteliclear*, 978 F.3d at 664.

22  **D.      Defendants Have Satisfied the Remaining Requirements of Rule 56(d)**

23          Defendants made their Rule 56(d) request early in the case, 10 months before the June 12,
24  2026 discovery deadline and over a year prior to trial. Dkt. No. 47 at 1–2 (case schedule); Dkt. No.

41 (Defendants' August 11, 2025 request). Their request is therefore timely. *See IVC Highlands TT., LLC v. DirectBuy, Inc.*, No. C16-327-RAJ, 2016 WL 3690127, at *2 (W.D. Wash. July 12, 2016) (finding that a Rule 56(d) request was timely when it was "filed within the time Defendant had to oppose the summary judgment motion").

Where, as here, "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any [Rule 56(d)] motion fairly freely." *Burlington*, 323 F.3d at 773 (citing the prior version of Rule 56(d)). Considering the parties' arguments and the sum of record, the Court easily finds that summary judgment is premature at this time. Accordingly, Defendants are entitled to relief under Rule 56(d) and, given the early stage of the proceedings, Smith's motion for summary judgment is denied without prejudice to filing a renewed motion after discovery after meaningfully meeting and conferring with Defendants.[7]

E.      **The Court Does Not Resolve the Parties' Preclusion Arguments**

Finally, as discussed, the Court knows very little about the parties' mediation before Jay Kornfeld. It appears to have resulted in a settlement agreement that resolved two prior cases between the parties. Dkt. No. 41 at 3–4, 9–10. Defendants argue that Smith's summary judgment motion should be denied because his claims are "barred" by the prior settlement or res judicata. *Id.* at 9, 14.

Smith disagrees, arguing that a settlement does "not support a res judicata defense[]." Dkt. No. 42 at 6 (citation modified). He adds that "pursuant to the Settlement Agreement, Mr. Kornfeld is to decide all questions of interpretation of the Settlement Agreement . . . [and] Mr. Kornfeld decided that the [Indemnification Agreement] was not referenced in the Settlement Agreement,

---

[7] The Court may impose sanctions if it finds that the parties have not meaningfully met and conferred prior to filing any dispositive motion in the future.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 13

and 'there is no resolution of any issues, disputes, or claims that might have existed or arisen under that Indemnification Agreement.'" *Id.* at 7.

Because the Court denies Smith's motion for summary judgment based on Rule 56(d), it need not resolve the preclusion disputes. Moreover, the Court does not have sufficient information to rule on the disputes; for example, Smith claims to provide "a true and correct copy of the mediator Jay Kornfeld's written decision, dated March 17, 2025, in the present matter," Dkt. No. 43 at 1, but instead provides an order signed by Superior Court Judge Charnelle M. Bjelkengren and dated June 18, 2025, *id.* at 4–7.

### III.  CONCLUSION

For the foregoing reasons, Smith's Motion for Summary Judgment, Dkt. No. 39, is DENIED without prejudice.

Dated this 16th day of January, 2026.

Lauren King
United States District Judge